## CELLA COMMISSION CO. v. BOHLINGER.

(Circuit Court of Appeals, Eighth Circuit. July 16, 1906.)

No. 2,370.

1. CONSTITUTIONAL LAW—SERVICE OF SUMMONS ON STATE AUDITOR FOR FOREIGN CORPORATION NOT DUE PROCESS OF LAW.

The act of the Legislature of Arkansas of February 26, 1901, Kirby's Dig. § 835, which authorizes a personal judgment against any foreign corporation on any cause of action in favor of a resident or citizen of that state upon service of a summons upon the Auditor of the state of Arkansas, is violative of the fourteenth article of amendments to the Constitution, because it authorizes judgment without the notice to the defendant of the hearing and proposed adjudication in his case, which is indispensable to constitute due process of law.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 929.

Service of process on foreign corporations, see note to Eldred v. American Palace-Car Co., 45 C. C. A. 3.]

2. JUDGMENT—SUBSTITUTED SERVICE INSUFFICIENT EXCEPT BY CONSENT OR TO EXTENT OF PROPERTY IN STATE.

In the absence of consent or of property in the state, which by attachment, or otherwise, has become the subject or object of the action, nothing short of service of a summons upon the defendant within the state or his appearance in the action will give to a court the jurisdiction requisite to sustain a personal judgment against a nonresident of the state or a foreign corporation.

3. STATUTES—WHEN CONSTITUTIONAL PART SUSTAINED WHILE UNCONSTITUTIONAL PART FAILS.

Where a part of a statute is constitutional and a part is unconstitutional, the former may be sustained in many cases where the latter fails.

Indispensable conditions of such a result are that the constitutional part and the unconstitutional part are capable of separation so that each may be read and may stand by itself, and that the unconstitutional part is not so connected with the general scope of the law that it is impossible to give effect to the intention of the Legislature in its enactment without it.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 58–66.]

4. SAME—PRESUMPTION FROM GENERAL LANGUAGE LEGISLATURE INTENDED NO LIMITATION OR EXCEPTION.

Where the Legislature of a state has included in a law by general language many subjects, persons, or corporations and has made no limitation or exception, the legal presumption is that it intended to make none.

5. SAME—JUDICIAL LIMITATIONS AND EXCEPTIONS TO MAKE STATUTE VALID INADMISSIBLE.

A statute of a state which includes, by general language, subjects within and those without the constitutional jurisdiction of the state may not be limited by judicial construction to the former class and then sustained.

6. SAME.

Where a statute of a state covers by general language foreign corporations which are doing business in the state and foreign corporations which are not engaged in business therein, the latter class may not be lawfully excepted from the operation of the law nor may the statute be lawfully limited by judicial construction to the former

class and then sustained, because such a course would make a new law which the original statute clearly indicates that the Legislature did not intend to enact and because it is impossible to separate such a statute into a constitutional part and an unconstitutional part, each of which may be read and may stand by itself.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Chester H. Krum, for plaintiff in error.

W. H. Pemberton, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. The Cella Commission Company is a corporation of the state of Missouri. A. Bohlinger brought an action against it for breach of a contract in one of the courts of the state of Arkansas. An attachment was issued and. H. B. Ake & Co. and the German National Bank of Little Rock were garnished, but no property of the defendant was found or attached. The cause was removed to the court below, where a judgment was rendered against the commission company, which is challenged by this writ of error. After the removal to the Circuit Court the commission company moved to quash the service of the summons, which had been made upon the Auditor of the state of Arkansas pursuant to section 835 of Kirby's Digest of the laws of that state, on the ground that it was a foreign corporation, and was not doing business in the state of Arkansas. The court found that the defendant was doing business in that state at the time of the service of the summons and denied the motion. This ruling presents the first question in this case. A state may lawfully prescribe the terms under which a foreign corporation may transact business within it. The Legislature of Arkansas fixed these terms under which permission was given to any foreign corporation to do business in that state: (1) That it should file in the office of the Secretary of State a designation of an agent who should be a citizen of that state upon whom service of summons or other process might be made; (2) that it should file in the same office a copy of its charter; (3) that it should pay certain fees; and (4) that if it should fail to comply with these conditions it should be subject to certain penalties. Acts 1899 (Kirby's Dig. §§ 825–834). The summons in the case in hand was not served upon any agent of the defendant appointed under the provisions of these statutes.

On February 26, 1901, while the laws cited above were in full force, the Legislature of Arkansas passed this act:

"In all cases where a cause of action shall accrue to a resident or citizen of the state of Arkansas, by reason of any contract with a foreign corporation, or where any liability on the part of a foreign corporation shall accrue in favor of any citizen or resident of this state, whether in tort, or otherwise, and such foreign corporation has not designated an agent in this state upon whom process may be served, or has not an officer continuously residing in this state upon whom summons and other process may be served so as to authorize a personal judgment, service of summons and other pro-

cess may be had upon the Auditor of State, and such service shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject-matter, whether sitting in the township or county where the Auditor is served, or elsewhere in the state. This act shall not be effective in cases where its enforcement would conflict with the powers of Congress or the federal laws to regulate commerce between the states." Kirby's Dig. § 835, p. 349.

The service of the summons in this case was made upon the State Auditor under this statute, and upon this service alone the personal judgment in question has been rendered against this foreign corporation. This statute of 1901 does not prescribe any condition or term under which any foreign corporation may do business in the state of Arkansas. It is an entirely independent act and a simple and plain fiat of the state of Arkansas that any of its citizens may recover a personal judgment against any foreign corporation upon any cause of action which he has against it upon service of the summons in the suit upon the Auditor of that state. It does not even require the Auditor to send the copy of the summons which he receives to the defendant or to give to it any notice whatever of the action, so that a foreign corporation of Maine or of England or of any other state or nation may find itself a judgment debtor for any amount in the state of Arkansas without any previous notice of the suit in which the judgment has been rendered.

A court that has jurisdiction of the person of the defendant and of the subject-matter of the action, a notice to the defendant before hearing and an opportunity to be heard before judgment are indispensable elements of that due process of law without which no person may be lawfully deprived of his life, his liberty or his property. Const. Amend. arts. 5–14. No state has any jurisdiction of persons or of property beyond its territorial limits (Story's Conflict of Laws, c. 2; Wheaton's International Law, pt. 2, c. 2) although it may often affect persons beyond its boundaries by virtue of its jurisdiction over their property within them and property without its limits by reason of its jurisdiction over the persons within them who own it. Nonresidents of a state and foreign corporations may consent that a summons or notice may be served upon them by its service upon an agent whom they appoint, or upon an officer of a state, and such service may then sustain the jurisdiction of its courts to render judgments thereon. When a state provides by law that one of the conditions under which a foreign corporation may do business therein is that the summons in an action against it may be served upon an agent which it appoints, and, in case that it makes no appointment, upon an officer of the state, and the corporation engages in business in that state, it thereby accepts the offer and the condition of the state and consents to such service and to the jurisdiction of the courts of that state to render judgments against it thereon. But no such condition or offer of condition to do business in Arkansas upon service of the summons upon the auditor of that state was made by the legislation of Arkansas, nor accepted by this defendant. The act of 1901 made the service of the summons upon the auditor as

effectual to give jurisdiction of foreign corporations which never transacted any business in the state as of those who were engaged in commercial transactions therein.

A state has jurisdiction of the property within its boundaries and to the extent necessary to justly apply that property it may by attachment thereof before hearing and by a substituted service of a summons upon its owner vest in its courts the power to render a judgment against the owner by virtue of which the attached property and that property only may be seized and administered by its court. No property was attached in this case, however, and no jurisdiction was acquired by the courts below in this way. But in the absence of consent to substituted service and in the absence of property of the defendant in the state, which is the subject or object of the action, nothing short of service of a summons upon the defendant personally within the state, or his appearance in the action, constitutes that due process of law which will give the necessary jurisdiction to a court of the state to render a personal judgment against a nonresident. Pennoyer v. Neff, 95 U. S. 714, 722, 724, 725, 726, 727, 730, 733, 24 L. Ed. 565; Webster v. Reid, 11 How. 437, 459, 13 L. Ed. 761; Boswell's Lessee v. Otis, 9 How. 336, 348, 13 L. Ed. 164; Picquet v. Swan, 5 Mason, 35, 19 Fed. Cas. 609, 612, No. 11,134; D'Arcy v. Ketchum, 11 How. 165, 175, 176, 13 L. Ed. 648; Bissell v. Briggs, 9 Mass. 462, 469, 6 Am. Dec. 88; Kilburn v. Woodworth, 5 Johns. (N. Y.) 37, 40, 4 Am. Dec. 321; Goldey v. Morning News, 156 U. S. 518, 521, 15 Sup. Ct. 559, 39 L. Ed. 517; Dull v. Blackman, 169 U. S. 243, 247, 18 Sup. Ct. 333, 42 L. Ed. 733; St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Hart v. Sansom, 110 U. S. 151, 155, 3 Sup. Ct. 586, 28 L. Ed. 101; Noble v. Union River Logging Railroad, 147 U. S. 165, 173, 13 Sup. Ct. 271, 37 L. Ed. 123; Millan v. Mutual Reserve Fund Life Ass'n (C. C.) 103 Fed. 764, 769; Ralya Market Co. v. Armour & Co. (C. C.) 102 Fed. 530, 532. The declaration of Chief Justice De Grey in Fisher v. Lane, 3 Wils. 297, that it would be contrary to the first principles of justice to bind a defendant personally when he was never personally served or given notice of the proceeding, has been universally recognized as the basic rule of English and American jurisprudence. The act of 1901, whereby the state of Arkansas attempted to subject all foreign corporations to personal judgments in its courts at the suits of its citizens upon the service of summons upon its auditor, was a flagrant disregard of the first principles of justice and a patent violation of the fourteenth article of amendments to the Constitution.

Counsel for the defendant in error, however, seeks to sustain the jurisdiction of the courts below and the judgment here in issue upon the ground that while this statute is void as to foreign corporations which are doing no business in the state of Arkansas, it is valid and constitutional as to those engaged in business in that state. But the statute is general in its terms. It makes no distinction between foreign corporations that are and those that are not engaged in business in Arkansas. The exception which it contains, that it "shall not be

effective in cases in which its enforcement would conflict with the powers of Congress or the federal laws to regulate commerce between the states," is not material, because the question at issue does not relate to the powers of Congress or the commercial laws of the nation, but concerns the power of the state and the national Constitution. The question is whether a statute of a state which includes by general language foreign corporations without as well as those within the constitutional jurisdiction of the state may be lawfully limited by judicial construction to the former class. Where a law is constitutional in part and unconstitutional in part, the former part may often be sustained, while the latter fails. But there are two indispensable conditions of such a result, that the constitutional and the unconstitutional parts are capable of separation so that each may be read and may stand by itself (Baldwin v. Franks, 120 U. S. 679, 685, 686, 7 Sup. Ct. 656, 32 L. Ed. 766), and that the unconstitutional part is not so connected with the general scope of the law as to make it impossible, if it is stricken out, to give effect to the apparent intention of the Legislature in enacting it. Allen v. Louisiana, 103 U. S. 80, 84, 26 L. Ed. 318; Baldwin v. Franks, 120 U. S. 679, 685, 686, 689, 7 Sup. Ct. 656, 32 L. Ed. 766; U. S. v. Reese, 92 U. S. 214, 218, 221, 23 L. Ed. 563; The Trade-Mark Cases, 100 U. S. 82, 99, 25 L. Ed. 550; U. S. v. Harris, 106 U. S. 629, 641, 642, 1 Sup. Ct. 601, 27 L. Ed. 290; The Virginia Coupon Cases, Poindexter v. Greenhow, 114 U. S. 270, 305, 5 Sup. Ct. 903, 29 L. Ed. 185; Spraigue v. Thompson, 118 U. S. 90, 94, 6 Sup. Ct. 988, 30 L. Ed. 115; The Income Tax Cases, Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 636, 15 Sup. Ct. 912, 39 L. Ed. 1108.

In U. S. v. Reese, 92 U. S. 214, 218, 221, 23 L. Ed. 563, Congress had enacted a law which prescribed punishment for the unlawful refusal to accept votes from all voters while its constitutional power was limited to prescribing the penalty for refusing to receive votes "on account of the race, color, or previous condition of servitude of the voter." The contention of the government was that the act was constitutional as to all refusals to receive votes on account of the race, color, etc., of the voter, and that it could be sustained to this extent and permitted to fail in other cases, because the two classes of cases and the two portions of the act applicable to them were readily separable. But the argument failed. The Supreme Court said:

"We are, therefore, directly called upon to decide whether a penal statute, which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish. For this purpose, we must take these sections of the statute as they are. We are not able to reject a part which is unconstitutional, and retain the remainder, because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not. The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there. Each of the sections must stand as a whole or fall altogether. The language is plain. There is no room for construction, unless it be as to the effect of the Constitution. The question, then, to be de-

termined, is, whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only."

In the Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550, Congress possessed the constitutional authority to protect trade-marks in interstate and foreign commerce and it enacted a statute which by its terms protected trade-marks in all commerce. The court was urged to restrict this law by construction to trade-marks in interstate and foreign commerce and to sustain it. But it cited and quoted from the opinion in the Reese Case, and held the act unconstitutional.

In the Virginia Coupon Cases, Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 29 L. Ed. 185, the same argument was again met and overthrown with this declaration, which was subsequently quoted and affirmed in the Income Tax Cases, Pollock v. Farmers' Loan & Trust Co., 158 U. S., at page 636, 15 Sup. Ct., at page 920 (39 L. Ed. 1108) :

"It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional, and another be declared inoperative and void, because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see and to declare, that the intention of the Legislature was that the part pronounced valid should be enforceable, even though the other part should fail. To hold otherwise would be to substitute for the law intended by the Legislature one they may never have been willing by itself to enact."

In Spraigue v. Thompson, 118 U. S. 90, 94, 6 Sup. Ct. 988, 30 L. Ed. 115, the Legislature of Georgia had enacted a statute which would have been valid if it had not contained certain unconstitutional exceptions. The Supreme Court of that state sustained it upon the ground that the body of the act was readily separable from the exceptions. The Supreme Court reversed that decision and said:

"It was held, however, by the Supreme Court of Georgia, in the case now before us, that so much of the section as makes these illegal exceptions may be disregarded, so that the rest of the section as thus read may stand, upon the principle that a separable part of a statute, which is unconstitutional, may be rejected, and the remainder preserved and enforced. But the insuperable difficulty with the application of that principle of construction to the present instance is, that by rejecting the exceptions intended by the Legislature of Georgia the statute is made to enact what confessedly the Legislature never meant. It confers upon the statute a positive operation beyond the legislative intent, and beyond what anyone can say it would have enacted in view of the illegality of the exceptions."

The act of the Legislature of Arkansas of 1901 expressly includes within the same general terms foreign corporations which transact no business within that state and those engaged in business therein. The words of the statute are plain and clear, so that there is no room for construction. It does not classify, distinguish or separate in any way corporations engaged in business in the state and those not thus occupied. The part of the statute applicable to the former class cannot be separated from that applicable to the latter class, so that each part may be read and may stand by itself, because they are both embodied in a single general clause and included in a single declaration.

The unconstitutional part cannot be eliminated from the law by striking out or disregarding any words or clauses of the act. That result can be attained only by introducing into the statute words of limitation, words which would expressly restrict the term "foreign corporation" wherever it occurs in the law by the phrase "doing business in the state of Arkansas," a species of legislation the court is without power to enact. U. S. v. Reese, 92 U. S. 221, 23 L. Ed. 563.

Again, this proposed amendment of the law would except from its operation all foreign corporations not engaged in business in the state of Arkansas, by far the larger portion of the corporations specified by the terms of the act. The Legislature of Arkansas had plenary power to limit this statute to foreign corporations engaged in business within that state and to except from its operation those which were not doing business therein. It expressly included both classes and excluded neither. The fact that it made no exception of foreign corporations which were not transacting business in the state raises a conclusive legal presumption that it intended to make none and it is not the province of the courts to do so. Omaha Water Co. v. City of Omaha (C. C. A.) 147 Fed. 1; Madden v. Lancaster County, 12 C. C. A. 566, 572, 65 Fed. 188, 194; Wrightman v. Boone Co., 31 C. C. A. 570, 572, 88 Fed. 435, 437; Union Central Life Ins. Co. v. Champlin, 54 C. C. A. 208, 210, 116 Fed. 858, 860.

The conclusion is that a statute of a state which clearly includes by general language foreign corporations without, as well as those within, its constitutional jurisdiction, for example those which are not doing business within the state and those which are engaged in business therein, may not be lawfully limited by judicial construction to the former class and then sustained (1) because the constitutional and unconstitutional parts of such a statute are not separable so that each may be read and may stand by itself, (2) because the Legislature excepted neither class but expressly included both and the legal presumption is that it intended to except neither, and (3) because such a limitation would except from the operation of the statute the larger part of those which the Legislature made subject to its operation by the plain terms of the law and would thus make a new statute. For these reasons the act of 1901 may not be limited to foreign corporations within the jurisdiction of that state and then sustained, but it is unconstitutional and void in toto and the service of the summons under it upon the auditor of that state gave the courts below no jurisdiction of the Cella Commission Company. The motion to quash the service of the summons should have been granted.

The judgment below must be reversed, and the case must be remanded to the Circuit Court, with instructions to dismiss the action on the ground that it has no jurisdiction of the Cella Commission Company herein; and it is so ordered.